Filed 7/30/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PAUL KIM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AIRSTREAM, INC.,<br><br>    Defendant and Respondent. | B334720<br><br>(Los Angeles County<br> Super. Ct. No. 23STCV11460) |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge. Affirmed in part and reversed in part.

The Barry Law Firm, David N. Barry; and Shay Dinata-Hanson for Plaintiff and Appellant.

Horvitz & Levy, Shane H. McKenzie, Andrew G. Spore; Bravo Law Group, Dolores E. Gonzales and James R. Robertson for Defendant and Respondent.

_____

This appeal involves a motorhome warranty agreement between respondent Airstream Inc. (Airstream), a company that manufactures motorhomes in Ohio, and appellant Paul Kim, a California resident who purchased an Airstream motorhome from a third party dealer in California. The warranty agreement contains an Ohio choice of law provision and an Ohio forum selection clause. Kim sued Airstream in California, alleging that Airstream had failed to comply with provisions of the Song-Beverly Consumers Warranty Act (Civ. Code, § 1790 et seq.)[1] (the Song-Beverly Act). Relying on the forum selection clause, Airstream filed a motion to stay the lawsuit in favor of the Ohio forum. Kim opposed the motion, in part because enforcing the forum selection clause would, according to Kim, diminish his unwaivable rights under the Song-Beverly Act.

The court first severed the choice of law provision as illegal under the Song-Beverly Act's waiver prohibition. (See § 1790.1.) It then considered whether, having severed the choice of law provision, enforcing the forum selection clause would diminish Kim's unwaivable California rights. Concluding that it would not, the court granted the motion to stay.

Kim argues the court reversibly erred by: (1) severing the choice of law provision, (2) placing the burden on Kim to establish that enforcement of the forum selection clause would not put Kim's unwaivable California rights at risk, and (3) concluding Airstream had met its burden of establishing that the forum selection clause could be enforced without diminishing these rights.

---

[1] Unless otherwise indicated, all further statutory references are to the Civil Code.

The court did not err in severing the choice of law provision. In so holding, we partially disagree with and partially distinguish two recent cases in this district, *Lathrop v. Thor Motor Coach, Inc.* (2024) 105 Cal.App.5th 808 (*Lathrop*), review granted Jan. 15, 2025, S287893, and *Hardy v. Forest River, Inc.* (2025) 108 Cal.App.5th 450 (*Hardy*), review granted Apr. 30, 2025, S289309.

The court also correctly placed the burden on Airstream, not Kim, to establish that pursuing Kim's lawsuit in Ohio court would not diminish Kim's unwaivable rights.

We disagree with the court, however, that the showing Airstream made below—a stipulation agreeing, with certain caveats, to apply the Song-Beverly Act in the selected forum—was sufficient to meet Airstream's burden. It was reasonable, given the state of the case law at the time, for Airstream and the court to rely on such a stipulation. But we now hold, as do portions of *Lathrop* and *Hardy* with which we agree, that such a stipulation is insufficient to meet this burden. Because this was not clearly the law at the time of Airstream's motion, we instruct the trial court, following remand, to provide Airstream the opportunity to meet its burden in another manner Airstream identifies on appeal: by establishing that, absent the choice of law provision the court properly severed, Ohio conflict of law principles would not diminish Kim's unwaivable California rights, because they require application of the Song-Beverly Act to Kim's claims.

Accordingly, we affirm the order to the extent it strikes the choice of law provision, but reverse it to the extent it grants Airstream's motion, and instruct the trial court to conduct further proceedings in a manner consistent with this opinion.

# FACTS AND PROCEEDINGS BELOW

## A.    *The Warranty Agreement*

On September 21, 2022, Kim purchased a new Airstream Atlas motorhome from an Airstream dealer in California for $481,164.00.  In connection with the purchase, Kim executed a standalone two-page "2022 Airstream Atlas limited warranty" (the warranty agreement).  (Capitalization omitted.)  The warranty agreement contains a "legal remedies" paragraph, written in all capital letters and located approximately two inches above Kim's signature.  (Capitalization omitted.)  This paragraph provides that Ohio law shall govern all disputes regarding or arising under the warranty agreement "without giving effect to any conflict of law rule that would result in the application of the laws of a different jurisdiction" and selects Ohio as the forum for resolving any such disputes.

The paragraph immediately after the "legal remedies" paragraph and immediately preceding Kim's signature provides: "Before I purchased my motorhome, I received, read and agreed to the terms and conditions of this limited warranty."  (Capitalization omitted.)  Below the signature line, in all capital letters, it provides: "This warranty gives you specific legal rights, and you may also have other rights which vary from state to state."  (Capitalization omitted.)

## B.    *Proceedings Before the Trial Court*

The Song-Beverly Act—California's "lemon law"—"protects consumers who purchase defective vehicles" (*Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 800)—defined to expressly include

motorhomes[2]—sold or leased in California. (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487–493.) When a manufacturer issues an express warranty in connection with a vehicle leased or sold in California, the statute " 'regulates warranty terms, imposes service and repair obligations on [the] manufacturer[ ], requires disclosure of specified information in express warranties, and broadens a buyer's remedies.' " (*Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, 1486; see, e.g., §§ 1793.1 & 1793.2; accord, *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 798 [Song-Beverly Act "is a remedial statute designed to protect[, *inter alia*,] consumers who have purchased products covered by an express warranty"].) The Song-Beverly Act also imposes certain implied warranties, regardless of whether an express warranty applies. (See §§ 1792–1792.5.) The Legislature has provided that a consumer cannot waive the protections of the Song-Beverly Act.

---

[2] Motorhomes "clearly are 'consumer goods' within the meaning of the [Song-Beverly] Act and are subject to the general application provisions of the Act, such as section 1793.2, subdivision (d)(1)[, which addresses express warranties]." (*National R.V., Inc. v. Foreman* (1995) 34 Cal.App.4th 1072, 1083; see § 1791, subd. (a) [" '[c]onsumer goods' means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables"].) In addition, the portions of the Song-Beverly Act applying to "new motor vehicles" define that term to include the vehicle component of motorhomes. (See § 1793.2, subd. (d)(2) [incorporating by reference the definition of "new motor vehicle" in § 1793.22, subd. (e)(2)] & § 1793.22, subd. (e)(2) [defining " '[n]ew motor vehicle' " to "include[ ] the chassis, chassis cab, and that portion of a motor home devoted to its propulsion"]; see *National R.V., Inc., supra*, at p. 1079.)

(See § 1790.1 ["[a]ny waiver by the buyer of consumer goods of the [Song-Beverly Act's] provisions . . . shall be deemed contrary to public policy and shall be unenforceable and void"].)

Kim filed a complaint alleging two causes of action: "breach of implied warranty of merchantability under the Song-Beverly Act" and "breach of express warranty under the Song-Beverly Act." (Boldface, capitalization & underscoring omitted.) Airstream filed a motion to stay the lawsuit, arguing the forum selection clause mandated that the matter be tried in Ohio. Airstream "stipulate[d] by [its] motion that (1) the substantive provisions of the Song-Beverly . . . Act . . . along with all their unwaivable California substantive rights will apply to [Kim's] currently enumerated claims when pursued in an action . . . in Ohio; and (2) [Airstream] will not oppose a request that the Ohio court utilize the Song-Beverly . . . Act to adjudicate those allegations." Airstream counsel's declaration in support of its motion confirmed that, by filing the motion, Airstream was stipulating to these two points and further attested that Airstream was willing, "should [Kim] wish," to "enter into a separate written stipulation to that effect."

Airstream argued that by its stipulation, Airstream had met its burden of proving there was no risk to Kim's unwaivable rights, were the court to enforce the forum selection clause.

Kim opposed the motion, rejecting the post-dispute stipulation offer and arguing a stipulation was insufficient to assure that Kim's unwaivable rights would be protected in Ohio. Kim also argued that the forum selection clause was unenforceable on the separate basis that Kim had not "freely and voluntar[il]y agreed to

6

the forum selection clause" and that it was unconscionable.[3] (Boldface, capitalization & underscoring omitted.)

The court granted Airstream's motion to stay "conditioned on [Airstream]—and the Ohio court—applying the Song-Beverly . . . Act to this dispute." In its minute order, the court explained: "The problem with this forum selection clause is that it applies Ohio law, 'without giving effect to conflict of law rules that would result in the application of the laws of a different jurisdiction.' This is a problem because the [motorhome] was purchased in California, and the Song-Beverly . . . Act cannot be waived." The court therefore struck the choice of law provision, relying on the Song-Beverly Act's waiver prohibition. (See § 1790.1.) The court found that doing so "cure[d] the unconscionability." The court also noted that Airstream had stipulated to have Ohio courts " 'utilize the Song-Beverly . . . Act to adjudicate [the allegations in the complaint].' "

The court found "[t]he remainder of [Kim's] arguments . . . not persuasive," specifically rejecting that Kim had not willingly agreed to the choice of law provision and forum selection clause and finding that Kim had not met the " 'heavy burden' " of proving it would be unreasonable to enforce the forum selection clause. The court explained that, because a forum selection clause "is reasonable if it has a logical connection with at least one of the parties or their transaction" (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*)), the clause here was reasonable because Airstream "manufactures its vehicles in Ohio."

Kim appealed.

---

[3] On appeal, Kim does not challenge the rejection of these contentions by the trial court. To the extent he raises unconscionability on appeal, it appears to be in the context of the choice of law provision being unconscionable and not severable.

## DISCUSSION

### A. *The Burden of Proving the Forum Selection Clause Will Not Diminish Nonwaivable Rights Lies with Airstream as the Party Proposing the Alternative Forum*

Where the effect of enforcing a contractual forum selection clause "has the potential of stripping California consumers of their legal rights deemed by the Legislature to be nonwaivable" (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11 (*America Online*), the party seeking transfer to the designated forum must "prove that enforcement of the forum selection clause would not result in a significant diminution of rights." (*Id.* at p. 10; accord, *Verdugo, supra*, 237 Cal.App.4th at p. 147.) If the party seeking enforcement of the clause makes this showing, a reviewing court will apply the general rule that "[a] mandatory forum selection clause . . . is generally given effect" (*Verdugo, supra,* at p. 147; *Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1521–1522 (*Wimsatt*)), and that the party opposing enforcement bears "the 'substantial' burden of proving . . . [the clause] should *not* be enforced" for some reason, unrelated to the effect of enforcement on unwaivable rights, that renders enforcement unreasonable or unfair. (*Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623, 1633, italics added; *Verdugo, supra,* at p. 147.)

The parties and we agree that Kim's rights as a consumer under the Song-Beverly Act are unwaivable. (See § 1790.1; *Lathrop, supra*, 105 Cal.App.5th at p. 816, review granted [Song-Beverly Act rights are unwaivable]; see also *Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1034.) Therefore, Airstream, as "the party seeking to enforce [the] forum

selection clause[,] [had] the burden [below] to show litigating in [Ohio] will not diminish [Kim's] unwaivable rights." (*Lathrop, supra*, 105 Cal.App.5th at pp. 816–817; *Rheinhart, supra,* at pp. 1034–1035.) Once Airstream made that showing, Kim could still avoid enforcement of the forum selection clause if he showed the clause should not be enforced for some other reason.

## B.     *The Court Applied the Correct Burden*

We review de novo whether the court applied the law correctly, including whether it assigned the burden to the right party. (*Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 59.) Based on our de novo review, we conclude that, although the court did not expressly state that Airstream bore the burden of establishing enforcement of the forum selection clause would not diminish unwaivable California rights, it did require Airstream to make this showing.

In arguing to the contrary, Kim takes out of context language in the order stating he had not "[met his] 'heavy burden.' " He characterizes this language as the court placing the burden on him to prove his unwaivable rights would not be protected in Ohio. But this language appears only *after* the portion of the order in which the court concludes Kim's unwaivable rights would not be in danger in Ohio. Only after so concluding did the court find that Kim had not met his burden as to "[t]he remainder of [his] arguments." Neither the language Kim cites, nor anything else in the record, suggests the court applied the incorrect burden.

**C.** ***Whether the Choice of Law Provision Is Illegal or Both Illegal and Unconscionable, the Court Did Not Err in Severing It***

The court took a two-step approach in determining whether Airstream had met its burden to show enforcement of the forum selection clause would not diminish Kim's unwaivable California rights. It first determined that the choice of law provision was invalid but severable, then concluded that, absent the choice of law provision, the forum selection clause should be enforced. In severing the choice of law provision, the court cited the Song-Beverly Act's waiver prohibition, section 1790.1.

Neither Kim nor Airstream disagree that the choice of law provision is illegal under section 1790.1. We likewise do not disagree. Kim, however, argues that the provision is not only illegal, but unconscionable as well. He further argues that the court erred in severing the choice of law provision because (1) the court should not have considered the choice of law provision and forum selection clause together for the purposes of ruling on Airstream's motion to stay, and (2) the factors set forth in *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478 (*Ramirez*) and *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*) for assessing when a court should exercise its discretion to sever an unconscionable contract term require severance of the choice of law provision.

### 1. The court did not err in considering the validity of the choice of law provision before considering the validity of the forum selection clause

As a threshold matter, Kim argues that the court erred in first severing the choice of law provision and thereafter separately

10

considering the validity of the forum selection clause, rather than analyzing them together under the framework for assessing the enforceability of forum selection clauses.  In so arguing, he relies on *Hall v. Superior Court* (1983) 150 Cal.App.3d 411 (*Hall*), a decision that actually *supports* what the trial court did here.

In *Hall,* the appellate court reversed the trial court's stay in favor of a Nevada forum in a case brought under the California Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.). (See *Hall, supra*, 150 Cal.App.3d at p. 418.)  That statute, like the statute here, prohibits waiver of its protections.  (Corp. Code, § 25701.)  The appellate court reversed the stay order because the trial court had ignored the effect of the choice of law provision on the plaintiff's unwaivable California rights entirely, and thereby applied the wrong criteria in upholding the forum selection clause. The appellate court commented that, consistent with the trial court's approach here, "a determination as to the validity of the choice of law provision is prerequisite to a determination of whether the forum selection clause should be enforced."  (*Hall, supra*, at p. 416.)  The holding in *Hall* does not address the issue of severance, nor does it appear from the opinion that any party even raised the issue.  The reference to "sever[ance]" in the portion of the opinion on which Kim relies is to severing an "issue" for purposes of analysis—not to severing a choice of law provision from an agreement.  (*Id.* at p. 415.)

### 2.    *Ramirez/Armendariz* severance analysis

We therefore turn to Kim's arguments challenging the merits of the court's severance analysis, rather than its decision to perform a severance analysis.  A court's power to sever a contract provision is, as relevant here, rooted in three code sections.  Section 1599 provides that "[w]here a contract has several distinct objects, of

11

which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." (§ 1599.) This general rule is tempered by section 1598's further instruction that "[w]here a contract has but a single object, and such object is unlawful, whether in whole or in part . . . the entire contract is void." (§ 1598.) Under section 1670.5, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (§ 1670.5, subd. (a).)

In *Armendariz*, the California Supreme Court held that, in assessing when to sever unconscionable provisions under section 1670.5, courts should apply the body of case law regarding severance of unlawful contract provisions as provided by sections 1598 and 1599.[4] (*Armendariz, supra*, 24 Cal.4th at p. 124; accord, *Ramirez, supra*, 16 Cal.5th at p. 516.)

Under that body of law, "[a]t the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality [or unconscionability].' (*Armendariz, supra,* 24 Cal.4th at

---

[4] Although unconscionable contract provisions are frequently also illegal or against public policy, unconscionability and illegality are not the same. Rather, because the determination "whether [an agreement's] terms are adhesive or unconscionable . . . [is] different from the determination of whether [a provision therein] . . . is unenforceable as against public policy" (*Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1123), " '[c]ontracts can be contrary to public policy but not unconscionable [citation] and vice versa.' " (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal. 4th 899, 943 (conc. & dis. opn. of Chin, J.).)

p. 124.) If so, the contract cannot be cured, and the court should refuse to enforce it." (*Ramirez, supra*, 16 Cal.5th at p. 516.) If the central purpose of the contract is not so tainted, "the court should go on to ask first, whether the contract's unconscionability [and/or illegality] can be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary. (See *Armendariz, supra*, 24 Cal.4th at pp. 124−125.) If no 'reformation is required,' the offending provision can be severed or limited, and 'the rest of the . . . agreement left intact,' then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose. [Citations.] If the unconscionability [or illegality] cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation . . . , then the court should refuse to enforce the contract." (*Ramirez, supra*, at p. 516, italics omitted.)

"Even if a contract can be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions." (*Ramirez, supra*, 16 Cal.5th at pp. 516–517, italics omitted.) In considering whether it would be in the interests of justice to sever an unconscionable provision from an arbitration agreement, the high court has stated courts "may . . . consider the deterrent effect of each option"—that is, of voiding the entire agreement or severing the offending term and enforcing the remainder. (*Id.* at p. 517; see *Armendariz, supra*, 24 Cal.4th at pp. 124–125, fn. 13.)

Applying the *Armendariz* and *Ramirez* considerations, we conclude that, regardless of whether the choice of law provision is unconscionable in addition to being illegal, the court properly

13

severed it. Accordingly, we assume for the purpose of our analysis that the choice of law provision is unconscionable.[5]

As to the threshold inquiry under *Ramirez/Armendariz*, we conclude "the central purpose of the contract is [not] tainted with illegality." (*Ramirez, supra*, 16 Cal.5th at p. 515; *Armendariz, supra,* 24 Cal.4th at p. 124; *Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 996; *MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 803 (*MKB*).) On its face, the agreement's central purpose is establishing Airstream's express warranty obligations. Kim argues that the actual " 'central purpose of the [warranty agreement]' " (*Ramirez, supra*, at p. 516) is to strip California motorhome purchasers of their unwaivable Song-Beverly Act rights. He characterizes the entire warranty agreement as an illegal scheme, based largely on the warranty agreement's obligations being different than, and in some respects less consumer-friendly than, those the Song-Beverly Act requires. Kim also points to Airstream having repeatedly been made aware that the choice of law provision is illegal in California and yet continuing to include it in the warranty agreement. Kim argues we must interpret this—particularly when considering the agreement provides less protection than does the Song-Beverly Act—as part of a deliberate, bad faith and illegal scheme to trick California

---

[5] At a hearing before this court, Airstream conceded that the warranty agreement reflects at least a modicum of procedural unconscionability. To be unconscionable, however, a provision must, to some degree, be both procedurally and substantively unconscionable. (See *Ramirez, supra,* 16 Cal.5th at p. 493 [courts apply a sliding scale analysis under which " 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa' "].)

consumers into waiving unwaivable Song-Beverly Act rights. (See *Armendariz, supra*, 24 Cal.4th at pp. 124–125, fn. 13.)

We find this characterization of the agreement problematic for multiple reasons. First, neither in practice, nor by its own terms, does the agreement apply only to purchases in California. Rather, the warranty agreement applies to Airstream vehicles sold by Airstream dealers nationwide—and thus to countless Airstream purchasers who have no Song-Beverly Act rights in connection with their motorhome warranty.

Second, Kim does not (and cannot) argue that the choice of law provision will *universally* deprive consumers buying an Airstream of lemon law rights that would otherwise protect them— let alone unwaivable rights. Kim has made no showing that all or any state lemon laws—other than California's—are more favorable to motorhome purchasers than is the Ohio lemon law, or that any such rights are nonwaivable.[6] Nor need we undertake a comprehensive survey of laws nationwide in order to ascertain that Kim could not make such a showing, given that, for example, many states' lemon laws expressly exclude motorhomes from their protections.[7] As applied to transactions in states where the lemon

---

[6] The sole basis for severing the choice of law provision is that it requires waiver of rights the Song-Beverly Act deems *unwaivable*. It is thus not relevant to the severability analysis whether application of the provision also causes a consumer to waive other rights under California law that the Legislature has not similarly declared to be unwaivable. Thus, our focus is on lemon law rights, as the unwaivable rights Kim identifies appear in the Song-Beverly Act, California's lemon law.

[7] See, e.g., Ala. Code, § 8-20A-1(2) (2025) [defining motor vehicle for purposes of Alabama lemon law to "not apply to motor

15

law that would apply, absent the choice of law provision, does not cover motorhomes, the choice of law provision does not require a consumer to give up any lemon law rights.  Thus, as applied to those transactions, neither the choice of law provision, nor the warranty agreement containing it, can have the effect—let alone the primary purpose—of denying consumers their state lemon law rights.

Third and finally, Kim urges us to infer a broader illegal scheme to deny consumers in California their unwaivable rights on the basis that this is the *only* plausible explanation for Airstream including the choice of law and forum selection clauses in the warranty agreement, despite knowing the choice of law provision is illegal and unenforceable in California.  But this is not the only possible explanation for including these terms.  To the contrary,

---

homes"]; Iowa Code, § 322G.2(13) (2025) [defining " '[m]otor vehicle' " for purposes of the Iowa lemon law to "not include . . . motor homes"]; 2025 Ky. Rev. Stat., § 367.841(3)(b) [defining " '[m]otor vehicle' " for purposes of Kentucky lemon law to "not include . . . [¶] . . .[¶] . . . [m]otor homes"]; Colo. Rev. Stat., § 42-10-101(2) (2025) [defining " '[m]otor vehicle' " for the purposes of Colorado lemon law to "not include motor homes as defined in [Colo. Rev. Stat., §] 42-1-102(57)"] & Colo. Rev. Stat., § 42-1-102(57) (2025) [defining "motor home" as "a vehicle designed to provide temporary living quarters and which is built into, as an integral part of or a permanent attachment to, a motor vehicle chassis or van"]; 31 R.I. Gen. Laws, § 31-5.2-1(8) (2025) [defining " '[m]otor vehicle' " or 'vehicle' " for purposes of Rhode Island lemon law to "not include a motorized camper as defined in [31 R.I. Gen. Laws,] § 31-1-3"] & 31 R.I. Gen. Laws, § 31-1-3(q) (2025) [defining motorized camper as "[a] camping recreational vehicle, built on, or permanently attached to, a self-propelled motor vehicle chassis cab or van that is an integral part of the completed vehicle"].

there is another plausible reason why Airstream might choose to include these terms—indeed, one identified by Airstream and other national motorhome manufacturers in documents of which we have taken judicial notice. Specifically, because Airstream manufacturers motorhomes only in Ohio, but sells them to dealers across the country, there are efficiency and predictability benefits to creating a single set of express warranty terms applicable to all vehicles Airstream manufactures, regardless of the state in which a dealer sells them to a consumer, and to have those terms interpreted by the courts of a single state under the laws of a single state to the extent possible. Thus, we are not, as Kim argues we are, presented with an agreement that only makes sense if we accept that Airstream is attempting to implement the illegal scheme Kim posits. Accordingly, we cannot hold the court abused its discretion in declining to infer such an illegal scheme based on the inclusion of the challenged terms.

Because we conclude the primary purpose of the contract is not tainted with illegality and does not perpetrate an illegal scheme, we " 'go on to ask . . . whether the contract's unconscionability [and/or illegality] can be cured purely through severance or restriction of [the choice of law provision], or whether reformation by augmentation is necessary.' " (*Ramirez, supra*, 16 Cal.5th at p. 516.) Removing the choice of law provision would not require any further revisions, additions, or deletions in other portions of the agreement. Thus, based on our de novo review, the choice of law provision is "capable of being severed." (See *Koenig v. Warner Unified School Dist.* (2019) 41 Cal.App.5th 43, 54 (*Koenig*) [whether a contract term "is capable of being severed is reviewed de novo pursuant to established rules governing contract interpretation"].)

"If an agreement can be severed, the trial court has discretion to do so and we apply an abuse of discretion standard of review to that decision," informed by the extent to which severance would be in the interest of justice. (*Koenig, supra,* 41 Cal.App.5th at pp. 54–55]; accord, *MKB, supra,* 184 Cal.App.4th at p. 803.) Here, severing the choice of law provision and enforcing the remainder of the agreement (in particular the forum selection clause) is in the interest of justice because the forum selection clause itself is clear and understandable even to a lay person. Requiring those who freely enter into a clear and unambiguous contractual obligation to honor that obligation—assuming, of course, that doing so does not waive an unwaivable right, an issue we address in the following section—is both in the interests of justice and consistent with the law's preference "to favor the enforcement of contracts and, if feasible, to carry out the intentions of the parties." (*Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 545; *Addiego v. Hill* (1965) 238 Cal.App.2d 842, 846.) Kim chose to sign the agreement and thus to litigate any dispute in Ohio. It would be unfair to allow Kim to avoid that obligation solely because the Legislature has declared illegal a *different* obligation, which the court has struck.

We finally consider the deterrent effect of refusing severance (assuming, as noted above, that the choice of law provision is unconscionable and that this aspect of the interests of justice analysis applies). The court in *Armendariz* explained this factor as follows: "An employer will not be deterred from routinely inserting . . . a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter. In that sense, the

18

enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme." (*Armendariz, supra*, 24 Cal.4th at pp. 124–125, fn. 13.)

In arguing similar circumstances are present here, Kim emphasizes that Airstream has long known the choice of law provision violates the Song-Beverly Act's waiver prohibition, yet Airstream continues to include the term in its warranty agreements. Kim posits that, if the court merely severs the provision, Airstream will have no reason to stop its illegal practice of trying to trick California consumers into forfeiting unwaivable California rights. The fundamental problem with Kim's argument is that it presumes Airstream is acting in bad faith, a premise our opinion rejects as unsupported by the record. Further, refusing to sever an unconscionable provision will *always* have some deterrent effect, meaning the deterrence factor, if applied wholesale, will always weigh against severance. But *Armendariz* and *Ramirez* specify only that a court "may . . . consider" deterrence (*Ramirez, supra*, 16 Cal.5th at pp. 517; see *Armendariz, supra*, 24 Cal.4th at pp. 124–125, fn. 13)—not that this consideration should govern. Otherwise, the exception would swallow the general rule preferring severance. (See *Ramirez, supra*, at p. 513 [noting " 'strong legislative and judicial preference' " for severing offending terms and enforcing the remaining agreement].)

*Ramirez* thus took a more nuanced approach to applying the deterrence factor, looking at it in context, including the power dynamics underlying a contract between an employee and employer agreeing to arbitration. *Ramirez* described the employer as knowing the terms were universally unfair and unenforceable, yet continuing to present them to prospective employees as a

nonnegotiable prerequisite to employment. The employee in *Ramirez* could either lose prospective employment or accept these unfair terms. Airstream's warranty agreement, by contrast, presented Kim with no such harrowing choice. In the context of a discretionary purchase of a motorhome, and given the lack of any evidence that Kim was not free to decline the written warranty coverage but still purchase the motorhome, we do not view the deterrence factor as preventing us from concluding that the court acted within its discretion when it severed the choice of law provision. We are reinforced in our conclusion by the language in *Armendariz* noting that, even where—unlike here—"the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme, . . . severance would be disfavored *unless it were for some other reason in the interests of justice.*" (*Armendariz, supra,* 24 Cal.4th at pp. 124–125, fn. 13, italics added.) As discussed above, we conclude severance is in the interests of justice. Thus, even if the deterrence factor weighed in favor of denying severance—which we do not conclude it does—the interests of justice would still, on balance, lead us to conclude that the court did not abuse its discretion in severing the choice of law provision.

### 3.    *Lathrop* and *Hardy* do not support a different result regarding severance

Kim argues that the trial court's severance of the choice of law provision is error under the reasoning of two recent decisions from our district, *Lathrop, supra,* 105 Cal.App.5th 808, review granted, and *Hardy, supra,* 108 Cal.App.5th 450, review granted. We disagree.

In *Lathrop, supra*, 105 Cal.App.5th 808, plaintiffs sued the manufacturer of a motorhome they had purchased, alleging violations of the Song-Beverly Act and the Consumer Legal Remedies Act (CLRA) (§ 1750 et seq.). (*Lathrop, supra*, at p. 812, review granted.) The defendant moved to stay the case based on a warranty agreement's forum selection clause, which also "stated that . . . Indiana law would govern all disputes." (*Ibid.*) The defendant "acknowledged [below] that . . . the choice-of-law clause was unenforceable because any waiver of the provisions of the Song-Beverly Act or the CLRA was contrary to public policy. To address these problems, [the defendant] offered to stipulate the substantive provisions of the Song-Beverly Act and the CLRA," as well as " 'all other unwaivable California substantive rights,' " would apply in an Indiana court. (*Lathrop, supra*, at p. 812.) Based on these representations, the trial court granted the motion to stay.[8] (*Lathrop, supra*, at p. 812.)

On appeal, Division Seven of this district assessed whether the defendant had met its burden of "show[ing] an Indiana court would provide 'the same or greater rights than California'

---

[8] In *Lathrop*, the trial court and the Court of Appeal treated a pre-dispute jury trial waiver contained in the agreement as depriving the plaintiffs of a nonwaivable California right as well. (See *Lathrop, supra*, 105 Cal.App.5th at p. 819, review granted.) The instant appeal does not involve this issue, and we thus need not discuss this aspect of *Lathrop*. Nor need we address the effects thereon of the California Supreme Court's recent decision on the topic in *EpicentRx, Inc. v. Superior Court* (July 21, 2025, S282521) __ Cal.5th __ [2025 WL 2027272 at *1] (holding "[a] forum selection clause is not unenforceable simply because it requires the parties to litigate in a jurisdiction that does not afford civil litigants the same right to trial by jury as litigants in California courts enjoy").

21

or would 'apply California law on the claims at issue.' " (*Lathrop, supra*, 105 Cal.App.5th at p. 818, review granted, quoting *Verdugo, supra*, 237 Cal.App.4th at p. 157.) Because "Indiana has a lemon law . . . [that,] unlike the Song-Beverly Act, . . . does not apply to motorhomes" (*Lathrop, supra*, at p. 818, fn. 4) and "the limited warranty contained not only an Indiana forum selection clause but also an Indiana choice-of-law clause, an Indiana court could enforce several terms of the limited warranty that would be unenforceable under the Song-Beverly Act." (*Lathrop, supra*, at p. 818, capitalization omitted.) Thus, "[l]itigating in Indiana under Indiana law would deprive [plaintiffs] . . . of their rights under the Song-Beverly Act." (*Lathrop, supra*, at p. 819.)

On appeal, the defendant manufacturer argued that its offer to stipulate that California law applied to plaintiffs' claims even if pursued in Indiana met the defendant's burden to show that enforcing the forum selection clause would not diminish plaintiffs' unwaivable California rights. The Court of Appeal treated this offer to stipulate as "essentially a request the trial court sever the unenforceable portions of the [warranty agreement] and enforce the remainder," and "look[ed] to" what it described as "case law governing severance of unlawful or unconscionable provisions in a contract." (*Lathrop, supra*, 105 Cal.App.5th at p. 820, review granted.) Without determining whether and to what degree the choice of law provision was procedurally unconscionable, the court concluded that severing "the unenforceable provisions"—that is, the "choice-of-law provision and jury waiver"**9** (*id.* at pp. 820–821)— would not be in the interests of justice, but rather would violate public policy for several reasons. (*Ibid.*) First, relying on the *Armendariz/Ramirez* deterrence factor, the court noted that the

---

**9** See *ante*, footnote 8, regarding the jury waiver issue.

22

defendant had acknowledged it knew the choice of law provision—
at least to the extent it required waiver of Song-Beverly Act
rights—was unenforceable under California law, "yet [the
defendant] routinely includes those provisions in its [limited
warranties] when it sells[10] a motorhome in California," offering to
stipulate away these provisions if a consumer is savvy enough to
know the choice of law provision is unenforceable under California
law. (*Lathrop, supra*, 105 Cal.App.5th at p. 821.) This, the court
concluded, permitted only some California consumers to exercise
their unwaivable Song-Beverly Act rights, but would chill lawsuits
by less savvy consumers. The court described this as a scheme that
"deter[s] [the defendant] from revising its warranty to comply
with California law." (*Lathrop, supra*, at p. 821.) The court also
noted that severing based on the manufacturer's offer to ignore
the choice of law provision "requir[ed] [plaintiffs] to accept [the
manufacturer's] stipulation." (*Id.* at p. 820, capitalization &
italics omitted.) On these bases, the court declined to accept the
defendant's stipulation as a basis for effectively severing the choice
of law provision.

As in *Lathrop*, the motorhome warranty in *Hardy* included
both a choice of law and a choice of forum, and the defendant
manufacturer offered to stipulate to the application of California

---

**10** Based on the facts as set forth in *Lathrop*, it does
not appear that the defendant manufacturer in that case sold
the motorhome to the plaintiffs in California (or elsewhere).
Rather, the factual summary suggests that the manufacturer,
like Airstream here, manufactures motorhomes out of state,
sells or places them with dealers across the country, including
in California, and when the dealer sells one to a consumer,
the manufacturer issues a warranty. (See *Lathrop, supra*,
105 Cal.App.5th at p. 821, review granted.)

23

law in the chosen forum.  (*Hardy, supra,* 108 Cal.App.5th at pp. 453–454, review granted.)  The court adopted the same approach to the stipulation offer as did *Lathrop*; it deemed the offer a request to sever the choice of law provision and any other provision inconsistent with unwaivable California law, then analyzed this request under the *Ramirez/Armendariz* framework. (See *id.* at pp. 458–460.)  Like *Lathrop*, *Hardy* concluded the choice of law provision could not be severed, because such severance "would function to condone an illegal practice" where "the multiple defects in the agreement indicate that the stronger party engaged in a systematic effort to secure a forum that would work to its advantage."  (*Id.* at p. 460; see *id.* at pp. 458–460.)  The court in *Hardy* also noted that it would violate public policy to rely on the defendant manufacturer's stipulation as a basis for severance, as it amounted to an unaccepted offer to rewrite the contract, and unconscionability is to be assessed at the time of contract formation. (*Hardy*, *supra*, at pp. 458–459.)

Neither *Lathrop* nor *Hardy* persuades us that the court here erred in severing the choice of law provision.  First, we disagree with these decisions' application and broad reliance on the *Armendariz/Ramirez* deterrence factor for the reasons set forth in Discussion *ante*, part C.2.  Moreover, the analyses in *Lathrop* and *Hardy* considered the stipulation the defendant offered as the sole basis for severing the choice of law clause at issue.  The courts thus focused on the policy and practical problems associated with reliance on such stipulations, equating severance based thereon with allowing the defendant manufacturer to "rewrite the contract" without the other party's consent.  (*Hardy, supra*, 108 Cal.App.5th at p. 458, review granted; see *Lathrop, supra*, 105 Cal.App.5th at p. 820, review granted.)  Here, by contrast, the court did not sever

24

the choice of law provision because of anything Airstream did or offered to do, nor do we rely on the stipulation in affirming the court's severance decision. Rather, we hold the court properly severed the choice of law provision based on the Legislature's instruction in section 1790.1 that such a provision is automatically "void" and unenforceable. The court's severance based on statute, not stipulation, neither "requir[es] [plaintiffs] to accept [the manufacturer's] stipulation" (*Lathrop, supra*, 105 Cal.App.5th at p. 820, capitalization & italics omitted) nor allows the manufacturer to "rewrite the contract" (*Hardy, supra*, 108 Cal.App.5th at p. 458). Therefore, *Lathrop* and *Hardy*'s concerns about such approaches do not apply to the severance analysis at issue in this case. (See *Lathrop, supra*, at p. 820 & *Hardy, supra*, at p. 458.)

### D. *Airstream's Offer To Stipulate Was Insufficient To Satisfy Its Burden*

We next consider whether the court erred in concluding that Airstream met its burden of establishing that, were the court to enforce the forum selection clause, Kim's unwaivable rights would be protected in Ohio court (taking into account that the properly severed choice of law provision would no longer apply). To make this showing, Airstream offered only one thing: a stipulation that "(1) the substantive provisions of the Song[-]Beverly . . . Act . . . along with all other unwaivable California substantive rights will apply to [Kim's] currently enumerated claims when pursued in an action . . . in Ohio; and (2) [Airstream] will not oppose a request that the Ohio court utilize the Song[-]Beverly . . . Act to adjudicate those allegations."

In dicta, *Lathrop* rejected a similar stipulation as sufficient to meet the defendant manufacturer's burden, and did so for reasons unrelated to the decision's rejection of the stipulation as a basis for

severing the choice of law provision (discussed *ante*). Specifically, *Lathrop* held as an alternative basis for declining to enforce the forum selection clause that "[e]ven if a stipulation to apply California law rather than Indiana law could salvage an otherwise unenforceable forum selection clause, [the] proposed stipulation was not sufficient" in any event, because its specific wording "created several opportunities for unwaivable rights mischief in Indiana." (*Lathrop, supra*, 105 Cal.App.5th at p. 824, review granted.) For example, the "inclusion of the modifier 'substantive' [in the stipulation] create[d] the potential for disputes over which rights are substantive and which are procedural." (*Ibid.*) The court also noted, inter alia, that the manufacturer had "offered to stipulate it would *'not oppose* a request that the Indiana court utilize [California law]' " but "did not say it would join that request." (*Id.* at p. 826, italics added.) Airstream's proposed stipulation includes these same qualifiers and caveats, and we agree that they set the parties up for continuing battles about which rights Kim will in fact enjoy in Ohio court. The stipulation thus does not prove that enforcement of the forum selection clause will not diminish Kim's unwaivable rights.

Our concerns about accepting such a stipulation as alone sufficient to satisfy this burden go beyond the specific wording Airstream used, however. Other wording may likewise prove problematic—not, as the *Lathrop* court suggests, because of unpredictability in how the foreign forum court will interpret it, but because of the unpredictability in how the parties will interpret and react to it. (Cf. *Lathrop, supra*, 105 Cal.App.5th at p. 826, review granted [noting among its concerns about the stipulation that "ultimately it will be up to the courts in Indiana to decide whether to honor all or part of the proposed stipulation"].) As the

26

voluminous body of case law adjudicating contract disputes reflects, wording that parties may have initially viewed as conveying a clear and mutually understood meaning can, when applied to real world circumstances, do anything but. For these reasons, we disagree that Airstream's proposed stipulation was sufficient—even after severance of the choice of law provision—to establish Kim's unwaivable rights would be protected.

### E. *Airstream Should Be Afforded an Additional Opportunity To Meet Its Burden Based on Ohio Conflict of Law Principles*

We nevertheless acknowledge that, based on the state of the case law at the time Airstream made and the trial court granted the motion, reliance on a stipulation—even one specifically limited to "substantive rights"—was reasonable. The motion and order granting it predate *Lathrop*'s criticism of such a stipulation by several years. Several forum selection clause decisions that existed at that time strongly suggested, albeit in dicta, that a stipulation to apply unwaivable California rights in a selected forum was a valid means of proving enforcement of a forum selection clause would not diminish those rights. *Verdugo,* for example, noted that the defendant seeking enforcement of forum selection and choice of law provisions in a case involving unwaivable California rights "could have eliminated any uncertainty on which law a Texas court would apply by stipulating to have a Texas court apply California law in deciding [plaintiff's] claims, but [the employer] did not do so." (*Verdugo, supra*, 237 Cal.App.4th at p. 158.) Similarly, *Hall* found significant in rejecting defendant's argument urging enforcement of a Nevada forum selection clause that the defendant had refused to stipulate to the application of California law in the Nevada forum. (See *Hall, supra*, 150 Cal.App.3d at pp. 418–419).

At least two cases—*Verdugo* and *Wimsatt*—describe the unwaivable rights the proponent of a forum selection clause must prove will be protected as " 'substantive.' " (See *Verdugo, supra*, at pp. 147–148 [the party seeking to enforce the forum selection clause bears the burden to show litigating the claims in the contractually-designated forum "will not diminish in any way the *substantive* rights afforded . . . under California law,' " italics added], quoting *Wimsatt, supra*, 32 Cal.App.4th at p. 1520.) And Ohio law at the time also suggested that an Ohio court would honor such a stipulation. (See *Powell v. Airstream, Inc.* (Ohio Ct.App. 2019) 140 N.E.3d 1172, 1176 [where buyer of Airstream motorhome sued in Ohio alleging breach of warranty, court applied Washington law in reviewing summary judgment ruling because "the parties agree that Washington law applies to the substantive arguments"]; see also Ohio Rev. Code Ann., § 1301.301(A) (LexisNexis 2025) [generally, "when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties"].)

Perhaps for this reason, Airstream focused below on its proffered stipulation, and not on whether, in the absence of the severed choice of law provision, Ohio conflict of law rules would require an Ohio court to apply the Song-Beverly Act. Airstream raises the latter argument for the first time on appeal. Under Ohio Supreme Court precedent, "where a conflict of law issue arises in a case involving a contract, the law of the state where the contract is to be performed governs." (See *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (Ohio 1983) 453 N.E.2d 683, 685.) "The contacts to be taken into account where the parties to a contract do not designate choice of law include: (1) the place of

contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." (*Keenan v. Huntington Acceptance Co.* (Ohio Ct.App. 1993) 633 N.E.2d 1164, 1170.)

We are persuaded that Airstream could have satisfied its burden below by providing a factual showing sufficient, under the factors outlined above, to support that Ohio conflict of law principles would result in an Ohio court applying the Song-Beverly Act to this lawsuit. Airstream made no such showing, however, and the factual record on appeal is insufficient for us to analyze the Ohio conflict of law factors in the first instance, even assuming, without deciding, that it would be proper for us to do so.

Under different circumstances, we might not be inclined to offer Airstream the opportunity to make such a showing after Airstream failed to raise the issue in the first instance. Given the state of the law at the time Airstream sought to enforce the forum selection clause, however, we cannot fault the company for pursuing the approach the case law suggested would render such a clause enforceable. Rather, we conclude it would be in the interests of justice to permit Airstream the opportunity to prove, based on Ohio conflict of law principles, that enforcement of the forum selection clause (but not the choice of law provision, which we conclude the court properly severed) would not diminish Kim's unwaivable California rights. We therefore instruct the trial court, following remand, to provide the parties an opportunity to present evidence and argument as to whether Airstream can meet its burden of proving Kim's unwaivable rights as to his Song-Beverly Act claims will be protected if the court enforces the forum selection clause

(but not the choice of law provision), based on Ohio conflict of law principles.

**F.** ***Neither a Conditional Stay, Nor Kim's Speculation Regarding Ohio Court's Ability To Correctly Apply California Law, Should Factor into the Court's Analysis Following Remand***

In the interests of judicial efficiency and guiding the trial court and the parties following remand, we address two additional arguments raised on appeal. First, we reject Kim's speculation that an Ohio court will be unable to correctly apply California law, and hold this is not a basis for declining to enforce the forum selection clause. Indeed, this argument is contrary to longstanding authority holding that California courts must "presume" that the courts of other jurisdictions will apply California law competently when called upon to do so. (*TSMC North America v. Semiconductor Manufacturing Internat. Corp.* (2008) 161 Cal.App.4th 581, 601; see *Wong v. Tenneco, Inc.* (1985) 39 Cal.3d 126, 134 ["the comity doctrine" requires California courts to "respect" other states and presume that a "forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there"].) Of course, no authority can assure with complete certainty that any court—outside or within California—will reach the correct result. But concerns about the inherent unpredictability of how courts apply the law cannot serve as a basis for declining to enforce a forum selection clause.[11]

---

[11] To the extent *Lathrop* relies on a relative inability of foreign courts to apply California law in its reasoning, we disagree with it. (See *Lathrop, supra,* 105 Cal.App.5th at p. 826, review granted [noting in rejecting cases cited by defendant manufacturer

Second, we do not view the conditional nature of the court's stay as a basis for concluding that Kim's nonwaivable rights will be sufficiently protected. Such reliance is problematic and inefficient for various reasons. (See *Verdugo, supra*, 237 Cal.App.4th at pp. 161–162.) For example, such reliance "overstates . . . a trial court's authority to resume an action after staying it on forum non conveniens grounds." (*Id.* at p. 161; *Hardy, supra*, 108 Cal.App.5th at p. 463 [" 'AOL suggests no procedural device which would allow a California court to proceed with the underlying case after a Virginia court has ruled' "], quoting *America Online, supra*, 90 Cal.App.4th at p. 21.)

---

"none of [them] sheds light on how an Indiana court would interpret [the manufacturer's] stipulation or apply California law in this case"].)

**DISPOSITION**

The order is affirmed to the extent it strikes the choice of law provision and severs it from the remainder of the warranty agreement.  The order is reversed to the extent it enforces the forum selection clause and grants Airstream's motion to stay the case.  Following remand, the court shall conduct further proceedings consistent with this opinion, based on which it shall decide whether to enforce the forum selection clause.

The parties shall bear their own costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.

ROTHSCHILD, P. J.

We concur:

WEINGART, J.

M. KIM, J.